Gerald F. BARNES, Complainant,

v.

ATLANTA TRANSIT SYSTEM, Inc., Robert L. Sommerville, Jefferies Wallace, Ray K. Mulsey, individually and as President of and Representative of Division No. 732 of the Amalgamated Association of Street Electric Railway & Motor Coach Employees of America,

and

Division No. 732 of the Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America, Defendants.

Civ. A. No. 5657.

United States District Court
N. D. Georgia, Atlanta Division.
July 31, 1956.

Frank A. Holden and Hugh G. Head, Jr., Atlanta, Ga., for plaintiff.

Poole, Pearce & Hall, Atlanta, Ga., Crenshaw, Hansell, Ware & Brandon, Atlanta, Ga., for defendants.

HOOPER, Chief Judge.

All the defendants on June 25, 1956 moved to dismiss this action on the ground that the Court lacks jurisdiction under the Civil Rights Act of Congress, 42 U.S.C.A. § 1981 et seq., the allegedly wrongful acts of defendants having been done by persons acting individually and not pursuant to authority of the State.

It is well-established that United States District Courts are courts of limited jurisdiction, and grounds of jurisdiction must be shown in the complaint. As there is no diversity of citizenship alleged between the plaintiff and the defendants, and the sole ground of jurisdiction alleged is a violation of the Civil Rights Act of Congress, this Court cannot entertain the action unless it comes within the provisions of the Civil Rights Act.

The complaint is eight pages in length and contains thirty-four paragraphs, but essentially charges the following:

Plaintiff was a bus operator employed by defendant Atlanta Transit System, Inc., and a member of Division No. 732 of the Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America. The President of Atlanta Transit System, Inc. and its Supervisor of Bus Operators, and President of said Amalgamated Association are also joined as defendants. Plaintiff alleges that he was unlawfully discharged by his employer on account of an alleged conspiracy between all of the defendants. In effect he charges that all of the defendants wickedly conspired to procure his discharge "from his said employment as aforesaid" because plaintiff, during the year preceding his discharge "began to develop a beard, or set of chin whiskers, which he grew solely because he liked and enjoyed them in the ancient manner in which free citizens, such as many who founded this country did grow chin whiskers, and in which the patriotic symbol known to all as Uncle Sam grows chin whiskers." (Paragraph 17.)

Plaintiff maintained that he "has an inherent and lawful right to grow and have and enjoy chin whiskers, the same being kept neat, clean-trimmed and attractive, and being an adornment to his person and a gift of nature to him that he liked and wanted as an attribute of a man." He alleges that the President of the Transit System "assured complainant that there was no reason why complainant should not continue to wear and enjoy the chin whiskers," said President even adding "that he admired people who adhered to a principle which they thought right regardless of what others might say, so long as there was no harm nor evil in the exercise of that principle." Plaintiff alleges the sole question at issue is, among other things, whether "any citizen has or does not have a right to enjoy his personal liberty and freedom to cut his beard as he likes", etc. In Paragraph 22 plaintiff invokes the first declaration of independence from England, signed in Virginia in 1765, the United States Constitution as of 1789, under which apparently "it was the unqualified and undenied right of every free American citizen to wear chin whiskers."

Despite the fact that from the standpoint of the plaintiff "said chin whiskers were and are, neat, attractive and clean and manly," defendants conspired to discharge him for the reason that "he did persist in wearing said chin whiskers." Had the local Union "faithfully, courageously and manfully supported and fostered complainant's said grievance, the Company would have taken complainant back," but the local Union is Company dominated, and will not protect plaintiff's rights.

Essentially, the complaint charges a conspiracy among the defendants to cause plaintiff's discharge. The motion to dismiss is based upon the contention

**158**

that the Civil Rights Acts of Congress protect the citizens against any invasion of their rights by acts of the states and the agents of the states, and not against wrongs committed by individuals. The Civil Rights Penal Acts contained in 28 U.S.C.A. § 1343(3) give the District Courts jurisdiction "to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States", but the deprivation must be had "under color of any State Law". As to civil actions the matter is covered by 42 U.S.C.A. § 1983, which likewise refers to persons "who, under color of any statute * * * of any State" are subjected to deprivation of constitutional rights. The act complained of must be done by a state, or under its authority, and the right violated must be a constitutional right or a right created under some Act of Congress.

Nothing need be added to the very full discussion of this question contained in the decision in the case of Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495. The principle has become firmly embedded in our Constitutional law that the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the states. That amendment erects no shield against merely private conduct, however discriminatory or wrongful.

Thus, where a person is unlawfully discharged by his employer such action even if wrong is individual and not state action, and Civil Rights Acts do not apply. See Teague v. Brotherhood of Locomotive F. & E., 6 Cir., 1942, 127 P.2d 53; labor unions are voluntary, not governmental bodies. Courant v. International Photographers, 9 Cir., 1949, 176 F.2d 1000, certiorari denied 338 U.S. 943, 70 S.Ct. 429, 94 L.Ed. 581, and their acts do not constitute a violation of the Fourteenth Amendment; see Moses Taylor Lodge No. 95 of Brotherhood of Railroad Trainmen v. Delaware L. & W. Ry. Co., D.C.Pa. 1941, 39 F.Supp. 456.

Whether plaintiff was in fact unlawfully discharged does not appear. See Lambert v. Georgia Power Company, 181 Ga. 624, 183 S.E. 814. Even if his discharge was unlawful, however, it was not caused by any officer of the state, and this Court therefore has no jurisdiction.

The complaint is dismissed with costs against the plaintiff.