**Louis O'HARA, Plaintiff,**

v.

**Lawrence MATTIX, Donald Sanders, John Biegalle, Woodrow W. Briggs and Charles W. Thompson, Defendants.**

Civ. A. No. 4280.

United States District Court
W. D. Michigan, S. D.
June 27, 1966.

Donald G. Jennings, Manistee, Mich., for plaintiff.

Warner, Norcross & Judd, Grand Rapids, Mich., Lewis A. Engman, Grand Rapids, Mich., of counsel, for defendant.

## OPINION ON MOTION FOR SUMMARY JUDGMENT

FOX, District Judge.

This is an action for damages resulting from alleged violations of the Civil Rights Act, 42 U.S.C. § 1981 et seq.

The complaint filed in February 1962 made claims against the individual defendants in this case, and against the City of Scottville, under Sections 1983 and 1985(3) of Title 42 U.S.C. In May of 1963, an order dismissing the City of Scottville was entered, and in July 1963 an order was entered dismissing the claims under Section 1983.

At that time the court denied defendants' motion to dismiss the claim under Section 1985(3), but noted that under this Section plaintiff would be required to show that some of the claimed conspirators were officers acting under color of state law, and that plaintiff would have the obligation of showing a deprivation of equal protection of the laws.

Defendants have moved for summary judgment.

Plaintiff is a traveling salesman who periodically held merchandise auctions in various cities in the State of Michigan.

Defendants are residents of the City of Scottville, Michigan, and during the time relevant to this case were all members of the Scottville Chamber of Commerce.

In June of 1961, defendant Briggs and Thompson were President and Chairman, respectively, of the Retail Committee of the Scottville Chamber of Commerce.

In December of 1960, an attorney, a member of the Scottville Chamber of Commerce, represented to some members of the Chamber that plaintiff's auction sales were in violation of the law. On June 17, 1961, this attorney represented to defendants Briggs and Thompson that plaintiff had engaged in a violation of the law in connection with his auction sale in Scottville in the winter of 1960, and that it was their duty as officers of the Chamber of Commerce to sign a complaint against the plaintiff. These defendants did sign a complaint in the presence of the Scottville Municipal Court Justice, who then issued a criminal warrant for plaintiff's arrest. Pursuant to this warrant, the Chief of Police of Scottville and a Deputy Sheriff from Mason County proceeded to arrest plaintiff late on Saturday afternoon, June 17, 1961, and took him to the Mason County Jail at Ludington, where he was incarcerated.

Prior to this incarceration, plaintiff was permitted to talk to his wife and arrangements were made at that time to secure the services of an attorney. Plaintiff was detained in the Mason County Jail until Monday morning, June 19, when he was released. The complaint was later dismissed with the consent of the prosecuting attorney of Mason County.

It is the claim of plaintiff that the defendants conspired to somehow prevent him from contacting the Municipal Court Justice who issued the warrant, with the result that he was forced to spend Saturday night, Sunday, and Monday morning in jail.

At argument on this motion for summary judgment, the court deferred decision until it could fully study the effect of the cases of United States v. Price, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966), and United States v. Guest, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966). Both of those cases dealt with violations of the Criminal Code, 18 U.S.C. §§ 241 and 242.

In the Price case it was held that violations of both Sections 241 and 242 re-

quired state action, and also that wrong perpetrated upon individuals by private citizens could not be recognized in federal courts under these two sections without state action, although individual participation by defendants in joint activivives with the state or its agents would be within the ambit of the term "state action."

In United States v. Guest, the court again affirmed this requirement, although Justices Brennan, Warren and Douglas disagreed, holding that under Section 241, Fourteenth Amendment rights are protected from conspiracy by anyone.

The terms of both sections of the statute under consideration in those cases are much broader than 42 U.S.C. § 1985 (3). The criminal sections proscribe deprivations of *any* rights, privileges or immunities protected by the Constitution or laws of the United States.

It was on this basis that the dissenters in the Guest case framed their opinion, holding that the rights were guaranteed protection regardless of their source, and although the Fourteenth Amendment would by its terms require state action, Fourteenth Amendment rights, when considered in the context of 18 U.S.C. § 241, would be protected against private, as well as state action.

■ It is clear that the requirement of state action is not diminished by the Price and Guest cases, and that state action must be shown to establish a case under 42 U.S.C. § 1985(3). See discussion, infra. From a reading of 42 U.S.C. § 1985(3), it is obviously necessary that there be (1) a conspiracy, (2) which would deprive a citizen of equal protection of the laws or of equal privileges and immunities under the law.

■ A conspiracy alone does not give a cause of action under the Section without overt acts in furtherance of the conspiracy. Hoffman v. Halden, 268 F.2d 280 (CCA 9, 1959).

Here plaintiff has shown no acts in furtherance of the conspiracy, but has simply alleged that there was a conspiracy. He concludes from the fact that he was unable to reach the Municipal Court Justice for the purpose of posting bond that defendants conspired so as to have the Municipal Court Justice out of the city, or at least out of reach of the plaintiff, but he does not know how.

■ The courts will not accept mere allegations of conspiracy; there must be some showing of facts to support the conspiracy. Morgan v. Sylvester, 125 F. Supp. 380 (D.C.S.D.N.Y., 1954), affirmed 220 F.2d 758 (CCA 2, 1955), cert. den. 350 U.S. 867, 76 S.Ct. 112, 100 L.Ed. 768 (1955), reh. den. 350 U.S. 919, 76 S.Ct. 201, 100 L.Ed. 805; Birnbaum v. Trussell, 347 F.2d 86 (CCA 2, 1965); Powell v. Workmen's Compensation Board, 327 F.2d 131 (CCA 2, 1964); Bargainer v. Michal, 233 F.Supp. 270 (D.C.N.D.Ohio, 1964).

At this stage in the case, plaintiff has had literally years to develop facts in support of this claim of conspiracy, but in his deposition on March 2, 1966, he did not know how defendants had acted to carry out the claimed conspiracy. (Deposition of Louis O'Hara, p. 48).

Furthermore, under the decided cases, the conspiracy to deprive a person of equal protection of the law, or the equal privileges and immunities under the law, must involve state action. Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1951); Seeley v. Brotherhood of Painters, Decorators and Paper Hangers, 308 F.2d 52 (CCA 5, 1962); Bryant v. Donnell, 239 F.Supp. 681 (W.D. Tenn., 1965).

All state officers in this case, the Municipal Judge, the Mason County Deputy Sheriff, and the Scottville Police Chief, have submitted affidavits alleging that they have never discussed with anyone the plaintiff or his incarceration (other than the ordinary discussions surrounding the issuance of the complaint), and furthermore, that they treated plaintiff in exactly the same manner as they would have treated any other person in the same circumstances.

Another requirement of the statute is that there be a denial of equal protection of the law, and this has been held to involve a showing of intentional and purposeful discrimination. Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944), Joyce v. Ferrazzi, 323 F.2d 931 (CCA 1, 1963); Bargainer v. Michal, supra.

Plaintiff here claims that he was kept from freedom by the machinations of the defendants which kept him from being brought before the Municipal Court Justice to post bond.

As stated above, the affidavits of all state officers involved represent that plaintiff was treated in exactly the same manner as anyone else would have been under the same circumstances. He was permitted to ·contact his wife, and a lawyer was contacted to act in his behalf on Saturday, the day of his arrest. Neither his wife nor his lawyer visited him at any time while he was in jail. There is no allegation that they were prevented from seeing him if they had so desired.

Thus, there is no showing of a denial of equal protection in this regard by the mere fact that plaintiff's wife or lawyer was unable to contact a Municipal Court Justice.

This is particularly so when reference is made to M.S.A. 27.3886, Comp. Laws 1948, § 730.156, and M.S.A. 28.862, Comp. Laws 1948, § 764.3. The former statute applies all provisions relevant to Justices of the Peace to Municipal Court Justices of any city affected by the provisions of the Act, and the latter statute provides that "in the absence of the justice of the peace who issued the warrant or in the case of his inability to attend, the accused person may be brought before another qualified justice of the peace within the same county, which latter justice of the peace may proceed to hear or try the cause and have full jurisdiction thereof."

Therefore, it seems clear that plaintiff could have been brought before any Justice of the Peace in Mason County for the purpose of posting bond. He had contacted his wife, and a lawyer had been contacted on his behalf, so there was no bar to this being accomplished.

The Supreme Court has discussed this element of intentional and purposeful discrimination necessary to establish a cause of action under Section 1985(3) in Snowden v. Hughes, supra, at 321 U.S. 8, 64 S.Ct. 397:

"The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination. This may appear on the face of the action taken with respect to a particular class or person, cf. McFarland v. American Sugar Refining Co., 241 U.S. 79, 86, 87, 36 S.Ct. 498, 501, 60 L.Ed. 899, or it may only be shown by extrinsic evidence showing a discriminatory design to favor one individual or class over another not to be inferred from the action itself, Yick Wo v. Hopkins, 118 U.S. 356, 373, 374, 6 S.Ct. 1064, 1072, 1073, 30 L.Ed. 220. But a discriminatory purpose is not presumed, Tarrance v. State of Florida, 188 U.S. 519, 520, 23 S.Ct. 402, 403, 47 L.Ed. 572; there must be a showing of 'clear and intentional discrimination', Gundling v. City of Chicago, 177 U.S. 183, 186, 20 S.Ct. 633, 635, 44 L.Ed. 725; see Ah Sin v. Wittman, 198 U.S. 500, 507, 508, 25 S. Ct. 756, 758, 759, 49 L.Ed. 1142; Bailey v. State of Alabama, 219 U.S. 219, 231, 31 S.Ct. 145, 147, 55 L.Ed. 191." Id. at 321 U.S. 8, 64 S.Ct. 401.

Plaintiff has not made such a showing.

Finally, affidavits submitted by all of the defendants state that there was no conspiracy or intention to discriminate against plaintiff, that there were no discussions regarding plaintiff at all insofar as defendants Biegalle, Mattix and Sanders are concerned, and that insofar as the other defendants are concerned the only discussions were those relative to the issuance of the complaint, in which those defendants state that they acted in ac-

cordance with what they believed to be their civic duty as represented to them by the attorney who informed them of the claimed violation by plaintiff of the Michigan law.

In addition, the affidavits of the defendants Biegalle, Sanders and Mattix assert that they were not even aware that a complaint had been filed or that plaintiff had been arrested, until after he had been released from jail. Defendant Mattix was outside the State of Michigan during the entire weekend of plaintiff's incarceration.

■ By plaintiff's own admission, the only basis for this suit is hearsay evidence, since he of his own knowledge knows nothing of the conspiracy, and as stated above, he has not been able to point to any acts in furtherance of the conspiracy. He simply contends that it was common knowledge in the City of Scottville that there was such a conspiracy (although in his deposition he was able to name only one person who had told him of such a conspiracy, and this was the person with whom plaintiff had dealings in renting a hall for the purpose of conducting his auction sales). Under these circumstances, the holding of the court in Moran v. Bench, 353 F.2d 193 (CCA 1, 1965), is particularly relevant to this case. (Defendants in the Moran case had submitted affidavits similar to the affidavits submitted by defendants in this case.)

"Against this plaintiff's affidavit asserts that defendants 'conspired.' She does not indicate precisely with whom they conspired, nor any facts tending to establish the existence of a conspiracy. The allegation of conspiracy implies that defendants acted with improper intent. See Frohwerk v. United States, 1919, 249 U.S. 204, 209, 39 S.Ct. 249, 63 L.Ed. 561. Courts must be cautious in labeling allegations of conspiracy as conclusionary, Hoffman v. Halden, 9 Cir., 1959, 268 F.2d 280, 294, as well as in resolving cases involving conspiracy or states of mind by summary judgment. Poller v. Columbia Broadcasting System, 1962, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458; Subin v. Goldsmith, 2 Cir., 1955, 224 F.2d 753, cert. den. 350 U.S. 883, 76 S.Ct. 136, 100 L.Ed. 779. Nevertheless, by the bare use of the word 'conspiracy,' with no supporting facts that tend to show the existence of an unlawful agreement or prima facie improper behavior, plaintiff has not met the burden of countering affidavits making such explicit denials. Scolnick v. Lefkowitz, 2 Cir., 1964, 329 F.2d 716 cert. den. 379 U.S. 825, 85 S.Ct. 49, 13 L.Ed.2d 35." Id. 353 F.2d at 194–195.

In summation, plaintiff has failed to show by anything other than his own conclusions that there were any acts in furtherance of the alleged conspiracy, all arguments being made simply from the fact that he was unable to contact the Municipal Court Justice who issued the warrant for his arrest. He has not shown state action by any other means than his own conclusions; he has not shown the requisite intentional and purposeful discrimination, since he has not shown any denial of equal protection of the laws; and finally, he has not under the authority of Moran v. Bench, supra, met the burden of proof required in the face of the affidavits submitted by all defendants, all state officers, involved in this case.

■ Plaintiff does have an action pending against these same defendants in a state court for false imprisonment (deposition of Louis O'Hara, pp. 41–2). The privileges against false imprisonment are not protected by Section 1985 (3). Watkins v. Oaklawn Jockey Club, 86 F.Supp. 1006 (W.D.Ark., 1949), affirmed 183 F.2d 440 (CCA 8, 1950).

Plaintiff has not alleged unequal protection of the laws by reason of being arrested under a law which is not enforced, or denial of equal protection of the laws by discriminatory application of the statute. This case rests simply on the fact that he, or his wife, or his attorney, was unable to contact the Municipal Court Justice who issued the warrant for his arrest.

There is nothing in the record to show what attempts were made to contact this Justice, nor how many attempts were made. Furthermore, from the statute, M.S.A. 28.862, plaintiff could have posted bond before any Municipal Court Justice in Mason County and thus secured his freedom. Therefore, even assuming the fact of a conspiracy (in furtherance of which no acts are shown) and a clear intentional purpose to discriminate (which is not evidenced from the record, and a discriminatory purpose is not presumed, Snowden v. Hughes, supra; Joyce v. Ferrazzi, supra), and participation of state officers under color of state law (which can at best be presumed from the facts so far in evidence), there is still no showing of a denial of equal protection of the laws. See quote from Snowden v. Hughes, supra.

The motion for summary judgment is granted, and this case is hereby dismissed.

It is so ordered.